WRIGHT, J.,
delivered the opinion of the Court.
This is an action of ejectment, in which the defendants had judgment in their favor, in the Circuit Court, and the plaintiff has appealed to this Court.
The correctness of this judgment is controverted upon the ground that the Circuit Judge erred in his instructions to the jury, and in the refusal to receive certain evidence offered by the plaintiff.
The plaintiff attempted to deraign title by reading the following papers: two grants from the State of North Carolina to Richard Henderson & Co., for 200,000 acres of land, in the year 1795 — a deed of partition among the proprietors of these grants, dated the 8th of August, 1797- — two deeds from Robert Burton to Sampson David, dated the 13th of December, 1815, one for 100 and the other for 200 acres — a deed for the same land from Isaac David, brother and heir of Sampson David, to Richard D. Wheeler, dated the 22d of September, 1828 — a deed or deeds for the same land from Richard D. Wheeler to Jacob Sharp, dated the 24th of May, 1838 — and a deed from said Sharp to the plaintiff for 1,000 acres of land *190 —including the tracts of 100 and 200 acres aforesaid — dated the 11th of February, 1848. It is claimed that the 200 acres covered the land in dispute.
Robert Burton, from whom the plaintiff attempted to de-raign title, was not one of the original grantees of the 200,000 acres, and no deed is shown from any one of them to him. He is embraced in the deed of partition, but the land in dispute is not within the boundary assigned to him. The land was laid off in lots, designated by letters upon the map and in the deed of partition, and the land in dispute' — as well as the 100 and 200 acres aforesaid — lie within lot L, which contains several thousand acres of land, and the same was assigned to Walter Alvis in right of his wife; and there is no deed from either him or his wife to Burton — whose lands, if he were legally entitled to any share, were assigned to him in a different part of the grant. It appears, however, that Burton, as early as 1807, claimed to be the owner of lot L, and between that time and the year 1815, conveyed portions of it, in separate parcels, to different persons, who have never been disturbed in their purchases; that it was called and known as-his land, without any adverse claim being set up by any one, until the year 1835, when Richardson and Smith made an entry within this lot and including the land in dispute.
It does not appear that either Burton, David, or Wheeler, ever had possession of any land within lot L.
The defendants read a grant from the State of Tennessee to Richardson and Smith, for 2,000 acres, dated the 11th of September, 1837 — a deed from them to Solomon Jones for 162 acres, dated 24th September, 1840, and a deed from him to Martin Meadows, the ancestor of defendants, for the same land, dated the 1st of March, 1841. This grant and these deeds covered the land in dispute; and defendants or their ancestor, were in actual possession of it, in the fall of 1842, and have continued the possession ever since.
Upon these facts, the Circuit Judge did not err in instructing the jury, that a grant, or deed of conveyance, from Alvis and wife to Burton, could not be presumed. It is true that in *191 ■the case to which we have been referred, of Jackson v. Miller, 6 Wend., 228, it was held that where a tract of land had been granted upwards of fifty years, and within twenty years after the grant, subdivisions of the tract were known by specific numbers, and a particular lot was called or known as the lot of one of the patentees, and there was no proof of a tenancy in common by the patentees for more than fifty years, it was held that a partition might be presumed, and that the lot in question had fallen to the patentee. Without undertaking to scrutinize this ease, or to compare it with the many decided cases upon the same subject, it is enough to say, that the almost uniform course of decision, in England and America, is, that the mere assertion of ownership to land, unconnected with actual possession, can afford no presumption of title. In Tennessee, it has, so far as we are informed, been universally understood, that the claim of ownership must be accompanied with an exclusive actual adverse possession, for such length of time as to afford the presumption of a grant or title. Even if it had been proved that the several purchasers from Burton within lot L, and without the land in dispute, had held possession of their respective tracts from the date of their deeds, that could not aid the plaintiff, since such possession did not extend beyond the boundaries of the deeds, and could furnish no evidence of title in other portions of lot L, not embraced within said deeds. Ross v. Cobb, et al., 9 Yer., 463, 470.
The Circuit Judge also instructed the jury that if the defendants were in the adverse possession of the land in dispute, at the time Sharp made his deed to the plaintiff, and Sharp was not in possession of any part, either by himself or tenant, then the deed would be void for champerty, unless he had been in the receipt of rents for one year preceding the time of sale; that the law required he should be in possession at the time of the sale, or should have received the rents for one whole year preceding it; otherwise, the fact of there being adverse possession at the time of the sale, would defeat the deed.
It is insisted on the part of the plaintiff that this charge is *192 erroneous; but we are satisfied, as to him, it is not. The uniform construction of the act of 1821 — which is, in most respects, a copy of the act of 32 H., 8, eh. 9 — -has been, that a sale by one out of possession, of land adversely held, is void. It is immaterial whether the vendor’s title be valid or .invalid. It becomes but a pretended right, within the statute, when he offers to make sale of it. It does not require any length of adverse possession, to make a sale and conveyance of land so possessed by another, champertous. The fact that it is adversely held is enough. Even in the case of a tenant, his possession becomes adverse to the landlord the moment his disclaimer is known to him; and though he is not permitted to deny his title, yet a sale by the landlord pending such adverse possession, the moment after it commenced, has been held champertous. Bullard v. Copps, 2 Hum., 409. And we apprehend that the fact that the vendor has taken the rents, either for less or more than a year next before the sale, if such a case can be supposed, where he is out of possession, and the land is adversely held, can make no difference. 2 Meigs’ Dig., 843; Whitaker v. Cone, 2 Johnson’s Cases, 58. The argument here is upon the words, “ or taken the rents, or profits, for one whole year next before the sale,” as used in the statute. It must be confessed it is difficult to understand what these words mean. In England they seem to have been applied to a tortious possession gotten wrongfully by a pretended title; and that although the true owner, if he regain possession, may sell immediately, yet that the wrongdoer, holding possession by a pretended title, must have been possessed, by himself or others, one whole year before he can sell, or contract to sell. 3 Thomas’ Coke, pp. 582 to 585. And such seems to be Judge Catron’s opinion in Whiteside v. Martin, 7 Yer., 397.
Thus, in 5 Comyn’s Digest, Title Maintenance, (A 5,) 27, it is said: So, if a man who has a right, obtains possession wrongfully, he can sell within a year without danger, as, if a disseizee disseize the heir of the disseizor.
But without any conclusive determination of the meaning *193 of the statute in this respect, it is enough that here the jury have found that the defendants were in the adverse possession of the land in dispute, at the time the plaintiff took his deed from Sharp, and that the latter was not, either by himself or tenant, in possession of any part of it. And so is the proof. This being so, the deed to the plaintiff is, as we have seen, champertous, and the Judge’s charge, even if his vendor had title, a fortiori, if he had none, could have done him no hurt.
It is next insisted the Court erred in refusing to permit the witness, TJsher, to be examined. The plaintiff chose to go to trial without the presence of this witness, relying upon his promise to attend; but he became intoxicated, and his attendance was only secured through an attachment; and when brought into Court, was unfit to testify because of his condition. And, again, during the argument, the Court directed him to be brought in to testify, but he was still intoxicated, and the Court refused to permit him to give evidence. This is not complained of, and could not be. 1 Greenl. Ev., sec. 365. But after the argument of the defendants’ counsel was concluded, and before the concluding argument for the plaintiff commenced, the Court was again applied to, by the plaintiff’s counsel, to be permitted to produce the witness in Court, and if in a condition to be examined, to examine him, with leave to defendants to rebut or comment on his testimony, which was refused by the Court — four hours having elapsed since he had been presented before.
This is assigned as error. In answer to this objection, it is sufficient to say that it does not appear when the witness was last offered to be examined, that he had been so restored to his reason, as to be capable of testifying; without which, as we apprehend, the Circuit Judge could not be put in error. And as to the application for a new trial, the evidence of this witness appears to be merely cumulative, and we are satisfied if it had been received, the result would have been the same. McGavock v. Brown & Williams, 4 Hum., 251, 253.
Affirm the judgment.